Separate opinions of the Court, in each case, were delivered as follows, by
*Rogers, J.
By the civil law, husband and wife are considered as persons capable of distinct and separate rights, and of making separate contracts, and they may even sue each other, as independent individuals; but by the common law, they are looked upon as one person; the legal existence of the wife, is to all civil purposes, merged in that of her husband; and, consequently, generally speaking, any contract made with her, is absolutely void.* How far a court of chancery could reach her, in certain cases, in respect to her separate estate, does not enter into this controversy; and nothing we now say can be construed as having any bearing upon a point which may hereafter arise. But although a married woman is not personally liable on her contract, yet she may act, and frequently does act, as the agent of her husband, and in that capacity may charge him with the payment of goods, purchased by her, although she cannot buy goods so as to charge him, without his assent, either express or implied. If goods come to the use of the husband, or to the use of his family, with his knowledge, he is chargeable; as if they are brought to his house, and used there. If the wife be allowed by the husband, as is generally the case, to be housekeeper, and to buy for him, or buy necessary apparel for herself, or necessaries for herself and family, or goods to carry on a trade conducted by her, during her cohabitation with her husband, his consent is presumed. In all such cases, the contract is with him, through the agency of the wife. When the husband dissents from such acts of the wife, beforehand, no such presumption can arise; and, consequently, in such cases, he is not liable on contracts made with her. Even where a man and wife are living, apart, if the husband has any control over goods, improvidently ordered by his wife, so as to have it in his power to return them to the vendor, and he does not return them, or cause them to be returned, he adopts her act, and renders himself responsible. Nor can a husband and wife, by any private understanding or agreement between them, of which others are ignorant, change their legal capacities and characters. It follows from these principles, which are supported by reason, as well as by the authorities that have been cited at the bar, that if the husband assents, or knowing of the contracts of the wife, does not expressly dis *393 sent, he is chargeable with her agreement; or if a contract be made by the wife, of which he is afterwards informed, and he acquiesces in it, by using the goods, and treating them as his own, he cannot avoid the legal responsibility which the law throws upon him. Where the husband is cognisant of the contract, the legal liability is incurred; and if he wishes to avoid responsibility, it is his duty expressly to dissent; and if the goods come into his possession, with a knowledge of the contract, to take the earliest opportunity to return them to the vendor. It is very clear from the evidence, that Edward Mackinley was perfectly acquainted with the course of dealing with his wife, before, at the time, and after *the several contracts made with her. His consent will therefore be and he can only avoid his legal responsibility, by an express disavowal of her acts, before, at the time, or after the contracts made, or by an immediate return of the goods to the vendor. But it is contended, that where credit is given to the wife, the husband is not liable, although the-wife lives with her husband, and he sees her in the possession of the goods. For this position, the plaintiff in error relies on Manby v. Scott, (I Mod. 138); Bently v. Griffin, (5 Taunt. 855); Metcalf v. Seaw, (3 Campbell, 22), and Montague v. Benedict, (3 Barn. & Cress. 631). In delivering the judgment of the court, in Manly v. Scott, Chief Justice Hale says, “ If a man takes my wife, and clothes her, this amounts unto a gift of the apparel unto her. 11 Hen. 4, 83. And I may take my wife, with the apparel, and no action lies against me. By the same reason, when a man delivers stuff, or other .wares, to my wife, knowing her to be a feme covert, to make apparel, without my privity or alloivanee, this shall be construed to be a gift of the stuff unto her, and I shall not be charged in an action for it.” In Bently v. Griffin, the question was, whether the general liability of the husband was not repelled by the circumstances, which showed that the credit was given to the wife. The wife purchased some fashionable dresses, unsuited to her condition in life; and the only fact, from which a knowledge of the sale could be brought home to him, was that some of the articles furnished by the plaintiff, were worn by her in the presence of her husband. But to rebut the fact of knowledge by the husband, and his consequent acquiescence, circumstances were shown which rendered it clear to the mind of the Court, that the plaintiff gave credit to the wife alone, without any idea that recourse should be had to the husband. The bills drawn on her, with a full knowledge that she was a feme covert, were accepted and paid by her. She also gave directions to the servant, when the articles were brought home, to put them away so that her husband might not see them. It is difficult to resist *394 the conclusion, that the tradesman and wife were well aware of their relative situations, and that he was willing to take the chance of payment by her. Stone v. M’Nair, (7 Term Rep. 166,) is the Case of a loan to the wife, without any authority of the husband, express or implied, for which the husband was held not to be liable. Metcalf v. Shaw, (3 Campbell, 27,) recognizes the general principle, that where credit is given to the wife, and not to the husband, he is not chargeable. Wearing apparel was supplied to a married woman, in quantities unsuitable to her husband’s degree, and without his knowledge; for which the credit was given to her, and her promissory note was taken in payment. “The action clearly cannot be maintained on the promissory note,” says Lord Ellenborough, “ as the wife had no authority, general or special, from her husband as his agent; and I think, he is not liable for any part of the goods, on this plain ground that they were not supplied on his credit, *and the plaintiff looked to the wife only for payment.” Montague v. Benedict, it appeared that the plaintiff had,- in the course of two months, furnished to the defendant’s wife, jewellery to the amount of 83?. and had always, when called on, avoided seeing the defendant; that goods to that amount were in no respect necessary to the defendant’s station in life. It was held, that as there was no evidence of any assent of the husband to the contract made by his wife, an action for the price of the goods, could not be maintained. In order to avoid the responsibility which the law throws upon the husband, there must be a want of knowledge of the transaction, an absence of assent, either express or implied, and moreover, the credit must be given to the wife, and not the husband. And this unquestionably is the amount of the cases which have been cited. With this qualification, I fully subscribe to the soundness of the principles stated. They are necessary to protect husbands from the folly or fraud of tradesmen on the one hand, and the improvidence of wives on the other; but this principle cannot apply, where the contract is made with his knowledge and assent. Where he assents beforehand, or knows of it, and does not expressly forbid it, or either uses the articles himself, or permits his family to use them, it would be a gross fraud to attempt to shield himself from payment. Whether the credit is given to the wife, is a question of fact for the consideration of the jury; but I cannot believe, that where a husband is well acquainted with the course of dealing in which his wife is engaged, when he does not forbid it, nor take any steps to put others on their guard, these cases can be made to apply. Mrs. Mackinley denies her liability, because she is a feme covert; and Edward Mackinley, because he did not make the contract; but the plain answer to this subterfuge, for *395 I can view it in no other light, is, that it is the contract of the husband through the agency of the wife. His consent is presumed, and the presumption can only be rebutted by an express prohibition on the part of the husband. The fact that the contract was made by the wife, and that she is charged with the goods, is, under the circumstances, of but little weight. It affects the form, but not the substance, of the contract. It by no means of itself discharges him from liability, which is the legal consequence of his assent to her acts. If a man obstinately and perversely furnishes a wife with articles, unsuitable to her condition in life, in opposition to the known will of her husband, this is a gift to her; and this principle is asserted in Manby v. Scott, and in the other cases cited. When it assumes the form of a contract, it creates a moral obligation; but the policy of our law forbids that it should be treated as a legal obligation, affecting the liability of the husband or wife.
Such, we think, are the principles which must govern in an action on the contract of sale. But this is an action of replevin, which disaffirms the contract.
*The plaintiff contends that the suit can be maintained on three grounds:
1st. That the property has never been changed; the goods having been obtained under such circumstances of fraud, as vitiated the sale.
2. Because the parties rescinded the contract.
3. Because, by the plea of non-cepit, the property is admitted to be in the plaintiff.
It would be a dangerous doctrine to establish, that where a person purchases commodities which, at the time, he is conscious he shall be unable to pay for, though these goods may have after-wards passed through other hands, in the fair way of purchase, or third persons may have become, in the regular course of business, interested in them, the original seller shall have the right to recover them, in whomsoevér’s hands they may be. But whatever may be the limitation of the right of the vendor, it is certain, as a general principle, that when a person purchases goods, with a preconceived design of not paying for them, it is a fraud, and the property in the goods does not pass to the vendee. Replevin, or trover, will lie by the vendor, against the vendee, although not against a bona fide purchaser without notice ■of the fraud. It is a question of fact, whether the vendee has made an improvident sale, or the defendant has fraudulently obtained the possession of the goods. If the jury believe the defendant formed a deliberate plan to obtain the goods, intending that they never should be paid for, with a preconceived resolution to embezzle the money, or to become insolvent, or to pass them *396 over to a favoured creditor, the defendant has been guilty of fraud, and the property in the goods does not pass. It is alleged, that the defendant did not buy the goods in the regular course of trade, but that he bought them for the fraudulent purpose of having them resold at a less price. If this was the intention of the vendee, and this purchase was the result of a general plan to defraud, the vendor may reclaim his goods, whatever appearance of fairness may attend the particular transaction of sale itself. What act of affirmance of the contract by the vendor may preclude him from asserting a right to the specific articles sold, it is not necessary to. determine; that right, however, may be maintained at any distance of time after the sale, where the fraud has been concealed, provided third persons may not have acquired an interest in the goods. But although the lapse of time will not of itself, without more, prevent the vendor from re-asserting his right to the property sold, yet he should be prompt in disavowing the contract, after coming to a knowledge of the fraudulent conduct of the vendee. He must do no act in affirmance of the contract, particularly when others may have credited the vendee, on the faith that he was the owner of the goods, or when the vendee has committed a notorious act of insolvency. That there should be some limit, on *the ground of policy, to the power of the vendor, in this respect, is plain, but the difficulty is to lay down any precise and definite rule. Each case must depend on its own circumstances: but in coming to a conclusion that fraud exists, in a particular case, the jury should be careful of the weight to be attached to transactions long subsequent in point of date.
To show fraud in the defendant and his wife, the evidence referred to in the second, fifth, sixth and twelfth exceptions, was properly received. There was some evidence, namely, the articles of agreement between Mackinley and wife, which were concealed, the sudden expansion of business, and accumulation of goods, much beyond the wants- of her ordinary and legitimate business, the immediate sale of some of the goods at a reduced price, and their repurchase, and the refusal to pay for goods, under the pretences stated, which tended to show a systematic plan and combination between Mackinley and wife to purchase goods, among which this parcel was one, with the fraudulent preconceived design of not paying for them. For this purpose, all the transactions of Mrs. Mackinley, and her declarations, in connection with the business in which she was engaged, as the agent of her husband, were properly admitted in evidence. It is true, that a disposition to cheat one person, cannot be called in to aid evidence of fraud in a subsequent, or prior and distinct transaction. But when it is one of a series of acts, although with dis *397 tinct and different persons, it may be received to prove a general combination, or preconcerted plan, to cheat and defraud, of which the one in controversy may be the result. The evidence was properly admitted, to show a general design in these parties to obtain the possession and control of a large amount of goods, under the false eover and pretence of a regular business, whereas the real, but concealed intention was, to dispose of them in a clandestine manner, with a view of converting them into cash, and by this means eluding the just claims of creditors.
2d point. That the defendant has disclaimed the contract. And this is a question for the jury; for if the defendant has disavowed all property in the goods, the vendor may reclaim them and recover the specific articles, or their value, in this action. From the return of the contract of sale, it is obvious, that when once entered into, it cannot be rescinded by either of the contracting parties, without the consent of the other; but an agreement .may be rescinded with the consent of both. When the vendee disavows all property in the goods, and refuses to pay for them, the vendor may elect to consider the contract at an end. If the defendant disavows the contract, and disavows all property in the goods, the vendor may elect, either to proceed on the contract of sale, or by action of replevin, which disaffirms the contract. The of Mrs. under the circumstances of this case, his possession; *and it matters not whether he or she, or both of them, refuse to return the goods to the owner; in either case he is liable for their detention. Husband and wife are so identified, that he is liable, as well for her torts or frauds, as for contracts made by her as his agent. When the sheriff returns that the goods are eloigned, the vendor may recover the value of the goods in this action. It may also be proper here to add, that we do not think, that because the creditors have brought actions on the contract, the plaintiff is thereby prevented from supporting an action of replevin. These actions are not brought on the same, but different contracts, and although the parties may be the same, yet the actions are not inconsistent.
But it is said, and this brings me to the consideration of the third point, that not only has the vendee disclaimed property in the goods, but that he has admitted on the record, that the property belongs to the plaintiff: and so unquestionably are the authorities, all of which have been collected by the industry of the counsel, with the exception of a solitary dictum of Justice Burroughs, in Clarke v. Davies, 7 Taunt. 72. By the plea of non: cepit, the caption and detention only are put in issue, and not the property which is admitted. Grilb. on Rep. 165, and the other authorities cited. The only point to which the evidenco *398 applies under that plea, is whether the defendant took the goods or not, or whether, if he came rightfully into possession, he has, and continues wrongfully to detain them. The plea of non-cepit, as is said in Wilkinson on Replevin, has been improperly called the general issue in replevin, for it only puts in issue the caption and detention. In point of form, it denies the taking only, and is pleaded without any suggestion for a return, and, consequently, there cannot be judgment for a return on that plea. But although it denies the taking only, yet, on that plea, the unlawful detention may also be inquired into; and this has been the invariable and constant practice, not only in England, but in this state, from the first settlement of the province. In England, the action of replevin has been generally confined to goods dis-trained for rent, but with us it has been used in all cases, where chattels in the possession of one person have been claimed by another.* Where the defendant wishes to put the right of property in issue, it is- done by a plea of property, which throws the burthen of proof upon the plaintiff in replevin, to prove property in himself. And this was the opinion of Justice Kennedy in Marsh v. Pier, (4 Rawle, 283,) with which, for the reasons there stated we fully concur. Clemm v. Davidson, (5 Bro. 399); 6 Harris & John. 471.
Eor the reason stated in a preceding part of this opinion, we think that the affidavit of Mrs. Mackinley, which forms the third specification of error, was correctly admitted, nor do we see any thing exceptionable in the refusal of the permission to ask the as contained in the fourth error.
*The seventh and eighth errors were considered together. The object of the evidence which was admitted, was to show that the goods of one of the vendors, were sold at auction, at an under value, and this was one of the means of identifying the goods. But this was not the best evidence, for Mr. Eassit, by whom the letter was written, should have been examined, and from him, or in some other way, it should have been ascertained, whether the ticket which was enclosed in the letter by him to the vendor, was attached to the goods sold at auction.
The ninth and eleven errors, are intended to question the decision of the Court, in Ellmaker v. Buckley, (16 Serg. & Rawle, 72.) We have examined the judgment of the Court, as delivered by Chief Justice Gibson, and see no reason to doubt the soundness of the» principle asserted by him, in relation to the order of the examination of witnesses. We therefore see no error in this part of the case, even if such an exception was the subject of review in error.
*399 I have carefully examined the remaining errors, and with the exception of the first error, we are of the opinion they have not been sustained.
The first error is that the judge admitted as witnesses severally, Peter W. Wiltbank and others; those individuals being interested in the action, and therefore incompetent to testify.
By the agreement of the 14th September, 1835, the creditors of Mary Mackinley bound themselves to each other, to take such lawful measures as maybe necessary to investigate her pecuniary affairs and transactions, and to discover and apply her property to the payment of her just debts, without preference or distinction. They also agreed to contribute in the ratio of -their respective debts, to- such expenses as may be necessary to carry the agreement into effect.
At a subsequent meeting of the creditors of Edward Mackinley, (and in this transaction his and her creditors are the same,) it was resolved, as the sense of the meeting, that all replevins and other process which had been issued, were for the common benefit of those who had or might sign the agreement of the 14th September, 1835.
The parties to these agreements, as is very clear, make common cause with each other. As they are entitled to all the benefits as equal participators in the amount recovered in the replevin, so they are liable to contribute to its expenses and costs; and a refusal to do so would be a gross fraud on the plaintiff on record. He could not discontinue the suit without their assent, nor could they refuse without breach of the agreement, to contribute to the expense of the suit, in the ratio of their’respective debts. The fact that their names do not appear on the record is immaterial. In Gallagher v. Milligan, (3 Penn. Rep. 177,) it was held, that any person, who, *at the time of the commencement of the is entitled to a of the money sued for, is liable to costs; and is, therefore, incompetent to give evidence, although he may release his interest to the plaintiff on record. On the authority of this case, we are of the opinion, that the Court erred in admitting the witness without payment of costs.
Judgment reversed, and a venire de novo awarded.
The opinion of the Court in Mackinley v. Heivitt, was also delivered by
Bogers, J.
The point ruled in Mackinley v. M'Gregor, renders a minute investigation of this case wholly unnecessary. It would lead to a repetition of the principles there stated; for in all the essential features, the cases are the same. It is, however, an act of justice to acknowledge the aid we have derived from *400 the industry and research of the counsel who argued this cause. This, unlike Mackinley v. M'Gregor, and in this only they differ comes before us on a demurrer to evidence. “ He who demurs to parol evidence,” says Chief Justice Tilghman, in Dickey v. The Administrators of Putnam, (3 Serg. & Rawle, 416,) “engages in an uphill business. Every point is taken fro confesso which the jury might, with the least degree of propriety, have inferred from the evidence. The defendant admits every fact which the jury could have found upon the evidence.”* Now, whether the jury could have found fraud, is immaterial, as they could without doubt,, have inferred with propriety, the several points on which the District Court founded their judgment; and these we concur with them in thinking, and for the reasons given by Justice Jones, who delivered the opinion of the Court, entitled the plaintiff to judgment on the demurrer.
Judgment affirmed.
Cited by Counsel post, 492; 4 Wharton, 502; 6 Id. 421; 3 Watts & Sergeant, 480 ; 6 Id. 348 ; 2 Barr, 155 ; 3 Harris, 187 ; 5 Id. 312; 1 Casey, 198 ; 2 Grant, 200 ; 1 Wright, 216 ; 2 P. F. Smith, 532: 2 Miles, 453.
Cited by Court 7 Watts, 307 ; 2 Harris, 277 ; 4 Id. 199 ; 8 P. F. Smith, 457.
Explained 9 Harris, 369, and commented on 2 Miles, 239.

 As to contracts of married women under the act of 1848, see 8 Casey, 433; 11 Id. 389 ; 1 Wright, 254 5 P. F. Smith, 386.

 See 3 Harris, 513; 5 P. F. Smith, 177.

 See 7 Wright, 442.