# ABBOTT v. MACKINLEY.

# SAME v. SAME.

# McCLURG v. MACKINLEY.

July and December, 1838.

*Motions for new trials.*

Actions against Edward M., on promissory notes, drawn and signed by, and with the name of his wife, Mary M. Proof, that the husband and wife lived together; that although keeping separate stores, he sometimes assisted in her store; that the husband knew of the contracts, dealings, and business of his wife, without forbidding any credit to be given on his account; and that although not in the instances of the notes on which the suits were brought, yet the husband had a knowledge of, and assented to her making other promissory notes and had negotiated them to raise money on them; accompanied by other circumstances tending to show his knowledge of and assent to her general course of business: *Held,* that there was no error in the charge of the judge who tried the causes, in saying that these circumstances, in point of law, amounted to an assent and authority on the part of the husband, and an agency on the part of the wife to draw the notes, on which he was responsible as for the act of an agent authorized by him to draw notes for him in the name of the agent, and that plaintiff was entitled to recover.

THE case of William L. Abbott *v.* Edward Mackinley, was first tried before STROUD, J., and a jury.

The declaration in this case was in *assumpsit* and contained five counts. 1, On a promissory note made by defendant, dated February 23, 1835, for 691 dollars 86 cents, at six months, payable to the order of Edward R. Myers, and by him endorsed and delivered to the plaintiff. 2, On a note of same date, sum, payee, &c. but laid to have been made by the defendant by the name of *Mary* Mackinley—the remaining counts were, *for money had and received—money lent and advanced*, and *account stated*—plea, the general issue.

The evidence on the part of the plaintiff, (and none was offered by the defendant,) tended to prove the following facts. That the defendant several years before the date of the promissory note

[Abbott v. Mackinley. Same v. Same. McClurg v. Mackinley.]

declared upon, had intermarried with *Mary Snyder,* who long before and at the time of the marriage, carried on the business of corset-making and of buying and selling, pretty extensively, fancy dry goods in a house which she had purchased—that neither kind of business suffered the least interruption, or underwent any change in consequence of the marriage, except that the name of *Mary Snyder* on a sign at the house, was substituted by *Mary Mackinley,* and the business generally was transacted under the latter name, and both in-doors and without, Mrs. Mackinley gave her close personal superintendence as well after the marriage as previously—that in February, 1835, she made a purchase of dry goods, of G. B. & J. B. English, on a credit of six months, and gave to them the promissory note declared upon, the payee Edward R. Myers; being a clerk at that time in the employ of Messrs. English, that she had previously made purchases of the same firm, but had in no instance given a promissory note to them in payment; that Edward Mackinley, the defendant, her husband, cohabited with her from the time of their marriage, and continued so to do when this note was given, and long afterwards; that he carried on business as a *watchmaker*, in a house adjoining the store which she superintended and managed; that he occasionally visited her in a back room adjoining the store, passing sometimes through the store to reach this room; that though he took no part in conducting the store in the day-time, yet in the evenings he sometimes assisted in placing upon the shelves, the goods bought and brought in through the day at her instance; that on an occasion of injury to some of the goods purchased by her, and which had been deposited in the cellar, which was damp, he gave directions and personally assisted in removing these goods to a back store-house, rented by her for that purpose.

There was no proof that any other note had been given by Mrs. Mackinley, except that declared upon.

The verdict was for the plaintiff. The defendant moved for a new trial. The charge of the judge who tried the cause, and the grounds of the application for a new trial sufficiently appear in the opinion of *Stroud, J.*

*Ingraham*, for plaintiff.
*C. Ingersoll*, for defendant.

19*

[Abbott v. Mackinley.   Same v. Same.   McClurg v. Mackinley.]

STROUD, J.—After recapitulating the evidence, I told the jury, (reserving the point,) that if they believed that this evidence established substantially (the foregoing statement,) they might infer, if they thought fit to do so, that the defendant knew that his wife was carrying on the business of buying and selling in the manner practised by her—that the business was, therefore, his business, carried on by his capital, (for the stock in goods on hand at the time of marriage, became at once his) and for his advantage; that *his* business name was *Mary Mackinley;* that *she* was merely his *agent*—and if from their knowledge as mercantile men, the business for which the goods were purchased of Messrs. English, was one usually conducted by means of *credit,* and that when this was obtained, promissory notes were generally given by the purchaser,—they might infer that this note was given by AUTHORITY of *the defendant,* by his wife, as his agent in the *business name* he had assumed.

Barlow *v.* Bishop, 1 *East* 432, and White *v.* Cayler, 6 *D. & E.* 176, were cited on the trial by the defendant, and have been relied upon on his behalf, on the motion for a new trial.   In the former of these cases, it was decided, that " though a note was given to a married woman, knowing her to be such, with intent that she should endorse it to the plaintiff in payment of a debt which she owed him (in the course of carrying on a trade in her own name, by consent of her husband,) yet the property in the note vested in the husband by the delivery to the wife, and no interest passed by her endorsement to the plaintiff;" and in the latter case, where a *feme covert* without any authority from her husband contracted with a servant by *deed* to pay certain wages, &c. on the rendering of certain services, it was held, that the service having been performed and compensation therefor withheld, the servant might maintain *assumpsit* against the husband, the deed of the wife being executed without authority of her husband, and in her own name, and void on account of her coverture.

To these cases and as having a more direct bearing on the point intended to be established by their citation, may be added Stackpole *v.* Arnold, 11 *Mass. R.* 27, and Minard *v.* Mead, 7 *Wendell* 68.   Stackpole *v.* Arnold, was assumpsit on promissory notes, alleged in the declaration to be made by the defendant by Cook & Foster as to one note, and by Zebedee Cook, as to the others, as defendant's agent.   But the notes were in neither

instance, signed by the defendant, nor did they purport to be signed by the alleged agent on behalf of the defendant. They were in fact signed merely by the agent in his own name without more. The court held, that the defendant could not be made liable upon them—that parol proof that they were made entirely on his behalf, and designed by the agent to bind him as principal, was inadmissible, on the ground " that no person in making a contract is considered to be the agent of another, unless he stipulates for his principal by name, stating his agency in the instrument which he signs."

Minard *v.* Mead, upon the view taken by the defendant's counsel, would be an impregnable authority. The syllabus of the reporter is this: " authority by a husband to his wife to *give notes*, will not subject the husband to the payment of a note given by the wife *in her own name*, without reference to the body of the note or in the signature, to the husband. A note to be binding in such case, must purport on its face to have been given by the wife as the agent or on behalf of her husband."

I have no doubt all these cases were rightly decided. The last three rest on the principle recognized in Combe's case, 9 *Co.* 76. *Resolution* 2*d*, " that when any one has authority as attorney, to do any act, he ought to do it in his name who gives the authority, for he appoints the attorney to be in his place, and to represent his person; and therefore the attorney cannot do it in his own name, nor as his proper act, but in his name and as the act of him who gave the authority."

But the case before us does not fall within this narrow doctrine. The second count alleges that the defendant made the note by the name of *Mary Mackinley*; and the jury was instructed that they might infer from the evidence, that the *business* name of Edward Mackinley was *Mary* Mackinley, and that the note was given under his authority by his wife, as his agent, in his assumed business name. Much of the mercantile business of the community around us, is transacted on this footing. The name of a firm seldom consists of the proper names of all the parties concerned, and not unfrequently several persons associate under the name of one only; and in other instances, a *company* is held out to the world, as conducting a business well known to be controlled by a single individual, on his own responsibility solely. If therefore, the business of the defendant was carried on under the

[Abbott v. Mackinley.   Same v. Same.   McClurg v. Mackinley.]

name of *Mary* Mackinley, the coincidence of his name, with that of his wife, and the additional fact that she signed the note in that name, would not exempt him from liability, *provided there was sufficient evidence to warrant the jury to draw the inference submitted to them.*   If the Christian name of Mrs. Mackinley were not the same as the business name of her husband, no one would doubt on the subject, upon the same state of evidence laid before the jury, and the coincidence of their names makes but a seeming difference.   Tillier *v.* Whitehead, 1 *Dall.* 269, is an express authority in support of the obligation of a party to third persons, on bills of exchange and promissory notes, where the name of a firm was used by an agent, without any notice on the instrument that the signature was done by procuration.   Was there sufficient evidence to authorize the inference that the note in question was made by the defendant through the authorized agency of his wife, in the business name which he had assumed? On reflection, I think there was not.   There was no evidence that the husband, in a single instance, had directly authorized, or subsequently ratified the making of a promissory note by his wife. *Had but one such instance* been proved, it would have been the duty of the court to leave it to the jury to draw the inference submitted to them, if they thought proper.   For want of this, the verdict must be set aside, and a new trial awarded.

PETTIT, *President*, and
JONES, J., concurred in granting a new trial.

The same cause subsequently came on for trial before JONES, J., and a jury.   The evidence was the same, with the exception of proof in addition from two witnesses, *Vinton* and *Scheerer*, tending to show that other notes had been drawn by Mary Mackinley, with the knowledge and assent of Edward Mackinley, and that he had either directly authorized, or subsequently ratified the making of the same.

The verdict was again for the plaintiff, and the defendant moved for a new trial, filing the following reasons:—

1. The judge having charged, that if the defendant was not shown to have given Mary Mackinley permission to carry on business for him, in the name and under the firm of Mary Mackinley, and that if the defendant's permission to Mary Mackinley

[Abbott v. Mackinley.   Same v. Same.   McClurg v. Mackinley.]

was merely to carry on business, without more, then the jury ought to find for the defendant, yet the jury found for the plaintiff, there being no evidence whatever of such a permission as is first mentioned.

2. The judge charged that the verdict should be for the defendant, if he simply permitted Mary Mackinley to do business in her own name, and on her own account, yet the jury found for the plaintiff; the evidence extending no further than to such permission, under any view of it.

3. The evidence was that the merchandize for which the note was given, was sold to Mary Mackinley, and the note taken of her by the seller of the merchandize, on her own credit and responsibility, without any regard to the defendant, his credit, or responsibility, yet the jury found for the plaintiff.

4. The evidence imputed no fraud to the defendant, or to Mary Mackinley, and the plaintiff's counsel distinctly disclaimed such imputation, yet the jury found for the plaintiff, influenced by out of doors rumors of fraud, and by prejudice against the defendant, thence arising.

*Ingraham*, for the plaintiff.
*C. Ingersoll* and *J. R. Ingersoll*, for defendant.

PETTIT, *President*, and

STROUD, J., were of opinion that there was sufficient evidence on this trial to authorize the jury to find the authority or assent of the husband for the making of notes by the wife, and therefore refused the motion for the new trial.

JONES, J.—The plaintiff in this case has brought suit as endorsee against the defendant, as the maker of a promissory note. In theory the action is very simple, and the evidence usually given in such cases is as simple as the theory.   The plaintiff needs only to prove the making of the note, and the endorsement of it as stated in the declaration.   No authority is necessary to prove that the case alleged in the declaration, is legally sufficient to entitle the plaintiff to recover.   The difficulty arises upon the evidence.

This case, however, as it is alleged in one count of the declaration, differs in one respect from the cases commonly pre-

sented in actions of the sort. The plaintiff alleges that the defendant (who is Edward Mackinley,) made this note *by the name of Mary Mackinley.* This difference is a matter of *circumstance,* not of principle or substance, and it creates no difficulty. The plaintiff has only to prove the fact as alleged, and the rule which stops a man from denying his own act, performed under an assumed name, comes to his aid, and he recovers by force of the general principle.

There is yet another circumstantial difference, but it does not appear upon the pleadings. On the trial the plaintiff did not prove that the defendant signed the note declared on, with his *proper hand.* The evidence was, that Mary Mackinley signed the note, which evidence by itself would be insufficient to charge the defendant. In order to supply the defect, it became necessary to prove that Mary Mackinley signed the note as the agent of the defendant. The plaintiff alleged that she did so sign it, and assuming the fact to be proven, there can be no more doubt that the defendant was bound than, in case he had signed the note with his proper hand.

I am thus particular in stating the points of the plaintiff's case, simple as it is, in order to show that as it was put forth on the trial, it is entirely free from all doubt, in point of legal sufficiency. Every question of law which we have now to consider, arises upon the evidence given in support of these points.

The method of proof which the plaintiff adopted, was to show that the defendant was himself engaged in business at No. 106 Chestnut Street, under the name of Mary Mackinley, and that Mary Mackinley *acted as his agent,* in conducting that business, and in the course of that business, and in pursuance of her authority from him, signed the note declared on, in his name of business.

It cannot be denied that it was perfectly competent for the plaintiff to adopt this method of proof, and if it was made out by evidence, he was undoubtedly entitled to a verdict.

The evidence, shortly stated, was thus:—The defendant was the husband of Mary Mackinley; he permitted her to conduct a business at the place mentioned, under her own name, as if she were a *feme sole.* She bought a parcel of goods of Messrs. English & Co., to whom she gave the note in question. The note was made payable to Mr. Myers, who was a clerk of

[Abbott v. Mackinley.   Same v. Same.   McClurg v. Mackinley.]

English & Co., and was endorsed by him, and so came to the hands of the plaintiff.

Before proceeding to examine the ground upon which it is contended that this evidence makes out the case, I will observe that the whole question seems to be determined by the case of Barlow v. Bishop, 1 *East* 432.   That action was brought by the endorsee of a promissory note against the maker.   The note was made payable to a married woman, who carried on trade at Birmingham in her own name, with the consent of her husband. The defendant knew that Mrs. Parry, (the lady) to whom he gave the note, was a married woman, and he gave her the note with the view that she should pay it over to the plaintiff, which she did by endorsing it with her own name.   The plaintiff's counsel contended that as she carried on trade in her own name, with her husband's consent, all acts done by her in the course of such trade, must be taken to be with the knowledge and consent of the husband; and he having permitted her to endorse the note in question, it in effect became his own endorsement.   Upon this point Lord Kenyon said, " that if she had endorsed the note *in the name of her husband*, he was not prepared to say that it would not have availed, as many acts of this nature may be done by a power of attorney, and the jury might have presumed what was necessary in favour of an authority from her husband for this purpose.   But the endorsement *being in her own name*, it is quite impossible to say, that she could pass away the interest of her husband by it."

It did not occur to the counsel in that case, (nor to the court,) to take the ground that the husband permitting the wife to carry on trade in her name was, *in point of fact*, carrying it on himself under her name, yet that evidence was before the jury.   But it seems to me, that it would have been repugnant to infer from the same evidence, both an authority from the husband to the wife to act in his name, (which Lord Kenyon intimated might be done,) and also the fact that the husband himself was acting in the name of his wife, in respect to the same subject matter.

In this case, however, both must be done, in order to enable the plaintiff to recover.   To avoid a variance, it was needful for the plaintiff to declare as he had, and to prove that the defendant adopted the name of his wife, and did himself carry on the business, in the course of which this note was given.   He must also

[Abbott v. Mackinley.    Same v. Same.    McClurg v. Mackinley.]

prove an agency or authority to the wife to sign this note in his name, and on his behalf. And the evidence from which both these facts are to be inferred, so far as it can be made available to him at all, is the same substantially as that given in the case of Barlow v. Bishop.

To reach these results, the plaintiff relies upon the authority of the case of Mackinley v. McGregor, reported in 3 *Whart.* 369. Whether that case contains any thing which can fairly be applied to this, I will now proceed to consider. It cannot be necessary for me to remark that I have no intention to call in question any doctrine advanced by the learned judge who delivered the opinion of the court in that case. The question which has divided this court is, whether that case is applicable in any of the points ruled, to this case.

It seems to me that this case differs from that as widely as actions on contract differ from actions for torts. In this case it has been observed, that the law of it, so far as it can be raised upon the *most special* pleadings, is quite indisputable; but in that case the questions discussed and decided, touched the very foundation of the plaintiff's right to recover. This consideration seems to discriminate the actions in all their essential points. The facts in that case, briefly stated, were as follows:—Mr. McGregor had sold and delivered goods to Mrs. Mackinley for the purposes of her business. He called on her, and also on her husband, for payment. Mr. Mackinley refused to pay for the goods; denied his liability on the contracts of his wife, and disclaimed all participation in her business. Mr. McGregor then issued a *replevin* for the goods sold, proceeding upon the ground that the property of the goods did not pass from him by the contract of sale. On the trial, in order to maintain this position, he alleged that the goods were obtained under such circumstances of fraud, as vitiated the sale. And whether it was so or not, was the main question.

The first portion of the opinion delivered in that case is taken up with the discussion of the principles which must govern in the *contract of sale.* There can be no mistake in this remark, because the learned judge in concluding that portion of his opinion, *cautiously confines* his observations to that subject. Besides, if that portion of the opinion be read with mental reference to the rights of an endorsee of a promissory note made by the wife,

we cannot fail to see that it is quite as inapplicable to him as to any other stranger to the contract of sale. It is obvious too, that this discussion was intended as introductory to the principal question in that case, viz.: the effect of fraud upon the contract of sale and the right of the plaintiff to recover his goods again upon showing that fact.

It seems to me but just to the learned judge himself, to consider his observation in reference to the subject matter which he was called upon to decide, and not to suppose that he intended to lay down abstract propositions which might be applied to actions resting upon entirely different grounds.

The question next discussed in that case is the effect of fraud upon the contract of sale.

It is impossible for me to perceive how the fact of fraud can be made available by the plaintiff in this action. In Mackinley *v.* McGregor, fraud was alleged *to defeat* a contract. In this case the question is whether the defendant *made the note* (i. e. the contract) at all, either personally or by agent, in his proper name or in an assumed name. All the plaintiff has to prove is, that the defendant made it. It is unimportant to inquire whether he made it *bonâ fide* or fraudulently. Rather, I should say, that the usual form of declaring in assumpsit precludes the allegation of fraud. The formal averment is, that the defendant undertook and *faithfully promised, &c.*

The only allegation of fraud admissible into the pleadings is, fraud in the breach of the contract, and that is not only unnecessary, but is now usually omitted. Besides, fraud cannot in the nature of things, constitute or induce a contract, though it may defeat a contract. If no contract was made, none can be proven, and to decide that a plaintiff may be dispensed from his obligations *to prove by evidence* the case alleged, simply by proving fraudulent conduct on the part of the defendant, would exonerate him entirely from the rules of pleading and evidence. For aught I can see, the plaintiff might as well allege one contract as another, if he is not obliged to prove his allegations, but only fraud. This case, therefore, is the reverse of Mackinley *v.* McGregor. Fraud was used in that case for a legitimate purpose. In this case it cannot be used for any purpose whatever.

But to go a little more into detail. The plaintiff, in this case, undertook to establish that the defendant assumed the name of

his wife, in respect to the business conducted by her, and in fact carried it on as his own proper business under her name. This is a question of fact, and ought to be established as such. It is alleged as a matter of fact, which the party undertakes to prove by evidence.

The case of Barlow v. Bishop admitted of the same inversion of the fact, (as I have already observed.) But it was not thought of in that case, nor do I believe it was thought of in the case of Mackinley v. McGregor.

But the use which is made of this case is, to supply a defect in the evidence of a matter of fact, necessary to be proved in order to establish the plaintiff's right to recover.

First, it is contended that the case of Mackinley v. McGregor proves that the wife under the circumstances of the case was in point of fact, the agent of her husband, and that too, not merely in reference to the purchase of goods which came to his possession, (for that is not enough in this case,) but for the purpose of doing every thing which she did in conducting her business.

Assuming (out of that case) the fact of agency, it is therefore inferred that the defendant was the principal in conducting the business, and as it was proved by the evidence that the business was conducted under her name, it follows as a necessary inference that he assumed her name, as his name of business. This theory of proof contains a mixture of evidence and legal presumption, and it seems to me a misapplication of the case relied on. It is not there decided that a husband who permits his wife to carry on a business in her own name, as if she were a *feme sole*, is in *point of fact* to all intents and purposes, carrying it on himself in an assumed name. The learned judge assumes (on the contrary) at the outset of his opinion, that in point of fact it is the business of the wife, because he saves the question how far a court of chancery could reach her under the circumstances of the case, in respect to her private property? But why save this question, if the business is truly in *point of fact* the proper business of the husband, as much so as if he conducted it personally, or by a hired clerk. The separate property of the wife cannot be made liable for the proper debts of the husband, except through the medium of a contract duly executed, within the terms of the trust by which the property is held. It is not liable for contracts which she makes in the character of agent. Besides his liability

for her engagements does not by any means depend upon any such assumption, as is evident from that case.

The argument in that case was conducted irrespectively of the name of the business, or the name in which the goods were charged, and of the question whether the credit was given to the wife or the husband. It cannot, therefore, be inferred from it, that the term *agent* was used in the strict sense of the law of principal and agent, and much less that the husband shall be deemed to have assumed, in point of fact, her name, as his name of business.

Passing this question for a moment, I proceed to consider the evidence in relation to the remaining fact to be established, viz. : the agency of the wife.

The use which is made of that opinion upon this point, is the reverse of the use made of it upon the point just noticed. On the last question it was used to supply a defect in the evidence—on this it is used to nullify evidence which is very pertinent to the question, although not important in a case like Mackinley *v.* McGregor.

The evidence in this case is, that the wife of the defendant signed her own name without addition to this note. Now if we give to the surmise of the plaintiff, (that the defendant assumed his wife's name,) the force of proof, the signature at most is equivocal. For there is no evidence that the wife changed or lost her name. In ordinary cases, if the name of the agent be the same as the name of the principal, a signature made in such a form, would be deemed the proper signature of the person signing. If J. S. be principal, and another J. S. be his agent, and the latter sign the name J. S. to a contract without addition, the law would presume, in the absence of evidence to the contrary, that he signed for himself, 11 *Mass. Rep.* 27 ; 9 *Co.* 76 ; 7 *Wendell* 68. We will however, in this case, assume that the presumption of law is the other way. Still as it is *but a presumption*, it may be rebutted by evidence. There are indeed some presumptions of law which, though really untrue, are so strong that no evidence or argument is allowed to countervail them. But we cannot allow a presumption of that sort to apply to this question, without denying the defendant a right to be heard upon an issuable fact. In the case of Mackinley *v.* McGregor, the agency was assumed not as a matter of fact, but as a presumption of law referrible to the theory

of its proceeding.   In that case therefore, it was a presumption which could not be rebutted, and of course not a traversable fact, and on that ground Mr. Justice Rogers said it was of no consequence to whom the credit was given, whether to the wife or to the husband.   The *inquiry in that case*, turned upon the legal effect of the defendant's conduct, in permitting his wife to purchase goods, upon the question of his liability for her engagements, and as the conduct proven, established his liability, it was perfectly immaterial to the defendant whether the *reasoning* of the law proceeded upon the idea of agency or not.   But in this case the inquiry concerns not a theory or the *rationale* of the action, but a single matter of fact, viz.: whether she signed the note as the agent of her husband; and the defendant needs no evidence upon this point, supposing the presumption to be against him, except upon the assumption that the fact last mentioned, viz.: that he assumed her name as his name of business is established.

But to come to this question.   The signature is equivocal.   I assume this in order to raise the question.   The question then is, how did the parties understand it?   Did Mrs. Mackinley mean to sign her husband's name, or her own name?   Did English & Co., understand that she signed her own name, or that she as agent, signed the name of her husband?   This question may become important in respect to the separate property of Mrs. Mackinley.   I submit that the intention of the parties at the time —the one in performing—the other in receiving the act (if it be ambiguous) determines the matter.   I cannot see how it can be the *act of the defendant by procuration*, if it was not intended or understood to be so.   Nor can I perceive how the fact of fraud can create or constitute *in point of fact*, an act by procuration, where there was no agency in fact, and none was believed to exist.

In this case the evidence is very clear that Mrs. Mackinley intended to act in her own name, and was so understood by Messrs. English & Co.   But to refer to the testimony generally.   Mr. English said he did not know Edward Mackinley—that he never inquired into his credit, that he trusted her—was in the habit of taking notes of her.   He took the note payable to his clerk, *to avoid responsibility* in passing it, as there would be in endorsing a note made by a married woman.   He spoke of Mrs. Mackinley throughout as being personally engaged in the business for herself,

[Abbott v. Mackinley.　Same v. Same.　McClurg v. Mackinley.]

and he dealt with her on that footing. She on the other hand acted in the same view—never spoke of an agency. She dealt as if she were a *feme sole*.

Upon this question the evidence convinces me that no agency was believed to exist by either of the parties, and that none existed except that qualified sort of agency which the law will presume to support an action *on the contract of sale*.

There is nothing in the case of Mackinley v. McGregor contrary to these principles. That case proceeds upon the basis of facts which may be used by the vender of the goods, either to defeat the contract on the ground of fraud, or to recover the price of the goods at his election. Of course fraud lies at the basis of that case. But although the most gross fraud on the part of the defendant were proved, yet the plaintiff might waive the fraud, and treat the contract of sale as *bona fide*, because the law will assume for the purpose of supporting the action for the price of the goods, that the wife acted as the agent of her husband in making the purchase; irrespectively of the question of credit, or even of the truth of the fact of agency. Upon the same principle, a party injured may, in many other cases, waive a tort and proceed to obtain redress as upon a contract. The form of the remedy in all such cases, and the theory upon which it proceeds are suited to the real facts of the case. But the party is bound to prove *by evidence all the facts* necessary to his recovery, and when he has done that, the law satisfies its own theories by the necessary presumptions. But the doctrine of waiver cannot be applied to an issuable fact, or a question of evidence like that under consideration. In truth, however, no question of fraud can be raised in this case, as well because the plaintiff sues upon contract, as because this plaintiff was a stranger to the contract of sale. His recourse is against the endorser. And even if English & Co. were plaintiffs in this action, although they might recover on the count for goods sold, &c. they could not recover on this note, if it had been made payable to them; because as it respects *the contract of sale* the law would imply an agency from the facts of the case, and so dispense with proof of actual agency, but in respect to the note, they must prove not only the defendant's assumption of his wife's name, as his name of business *in point of fact*, but also *an agency in fact*. Yet had Mrs. Mackinley signed

20*

*her husband's name* to the note, as then it would appear on the instrument to be an act done by procuration; the authority of the wife to perform it, might be presumed by the jury according to the suggestion of Lord Kenyon in Barlow *v.* Bishop.

The testimony of Charles A. Vinton and Gottlieb Scheerer, does not, in my opinion, alter the case. At most they lay a ground of presumption in respect to other notes drawn by Mrs. Mackinley.

But the presumption may be rebutted by testimony, and the testimony referred to countervails it. The truth is, the real ground taken in Mackinley *v.* McGregor, is utterly inconsistent with the existence of the facts now under consideration. The whole concern of Mrs. Mackinley was treated as a scheme of fraud, intended to be accomplished by the business of Mrs. Mackinley. It was a part of the scheme (as alleged,) that she should be the actor, by the permission of her husband. Assuming the fact to be so, then the fraud however gross, cannot alter the facts which transpired in its execution. It cannot create new facts, nor is there any principle which will excuse the plaintiff from proving by evidence in the usual way, all the facts necessary to recover in the particular form of his action. In considering the facts, he may select such a remedy as is suited to them, and the law will extend to him in some forms of action more or less aid, by intendments necessary to the application of the particular remedy. In this case the plaintiff might perhaps have sued in the name of Messrs. English & Co., to their own use on the contract of sale, and in that way obtained redress.

But in this action, I conceive it would be a violation of settled principles to allow him to recover.

To hold the defendant liable on his wife's contract, in purchasing the goods, is ample for the redress of all persons privy to those contracts. To extend the liability of a husband to the promissory notes of his wife, would make him liable, when he has no means of protection against her improvidence or indiscretion. The opinion in Mackinley *v.* McGregor, contemplates the protection of husbands as well as of tradesmen. The principles there stated are *sensible* and *safe*, and *sufficiently ample* to meet all *proper exigencies*. To extend it further would render it unsafe for husbands to allow their wives to conduct any business, as if they were sole. The policy of the law does not require the prohibition of such a business. The domestic comforts of many

[Abbott v. Mackinley.   Same v. Same.   McClurg v. Mackinley.]

families, especially in populous cities, are greatly promoted by allowing the husband and wife to act separately—the husband as a mechanic for example, and the wife in a small trading business suited to her condition.   Usually the wife's business is a small one.   The case of Mrs. Mackinley is peculiar; but we ought not to lay down a general rule, which though it should seem suited to the ends of justice in a particular case, would produce mischief in many others.

These briefly are my views.   I am decidedly of the opinion that in this case there should be a new trial.   The verdict was contrary to the intent and meaning of my charge, inasmuch as there was no evidence in support of the points put to them which in my judgment justified their finding.   The defendant might in this case, I think, have safely demurred to the evidence.   It is totally unlike in all its essential points, to the case of Hewit v. Mackinley.

Had I anticipated the views which the majority of this court take upon the evidence, I could not, with a safe conscience have forborne to express distinctly, as was done in the case of McClurg and Mackinley, the views of this court on the doctrines discussed, though the opposite of my own, for then the party would have had it in his power to review the principles.   But as the charge was, the defendant is without remedy except by new trial, and if the views expressed in this opinion should be found to be correct, the defendant will have no remedy in this case.

New trial refused.


### McClurg v. Mackinley.

THE case of McClurg v. Mackinley was tried before Pettit, *President*, and a jury.

The action was in case.   The *narr.* was on four promissory notes signed " Mary Mackinley."   Plea—non assumpsit, with leave. &c.

Two of the notes were in favour of Joseph J. Dean, signed " Mary Mackinley;" one other in her own favour " for merchandize received of H. C. Corbit;" and one other, to order of Wm. B. Meany.

Hannah Hill, sworn.—I know Mary Mackinley's handwriting.

I have seen her write.  This is her handwriting on the three notes, (omitting Meany's).

Thomas E. Crowell, sworn.—I have seen Joseph Dean write; know his handwriting; this is it—(endorsement of two notes.)

Charles Vinton, sworn.—Mr. Mackinley is an uncle of my wife.  I had a note of Mary Mackinley, which I received from Edward Mackinley; I gave the note to Mr. Croft; Mr. Mackinley asked me if I could get him any money for it; I applied to Mr. Croft, to know if he had money; he said about 1000 dollars; I told Mr. Mackinley, he got a note for near that amount of Mrs. Mackinley, in blank, I filled it up to order of Mr. Croft; he gave me the money for it; I gave it to Mr. Mackinley.  The note was nine hundred and odd dollars; exact amount I cannot tell.  I got for Mr. Mackinley, at his request, on Mrs. Mackinley's note, all the money Mr. Croft had to spare; it was in May, 1835.

David Milne, sworn.—I boarded in same house with Mrs. Mackinley, in August, 1835, till April, 1836; defendant and Mrs. Mackinley lived together as man and wife; cohabited as such; his store was next to hers, a jeweller's; hers a corset-maker's, and haberdashery; he treated her as his wife; her back parlour was connected with her store; they cut out corsets in the back parlour; an alley between the two stores; cellar to her store, opened front, I think; also am positive there was one under parlour window.

Hannah Hill, called again.—I lived with Mrs. Mackinley from September, 1833; I think for a year and more—two months— she is wife of Mr. Edward Mackinley; I don't remember the year she kept a haberdashery store; large quantities of goods in cellar; Mr. Mackinley had watchmaker's store next door; they boarded together in the dwelling part of Mrs. Mackinley's store. Sometimes he would at night aid to put goods on shelves, in her store, and pack boxes; he was there part of time when Mrs. Mackinley had her goods moved from cellar to back parlour; I aided in moving some of the goods; they occupied as sleeping room a front room in third story; after sheriff's officer came, some goods were put there by the girls; Mrs. McK. kept officer in conversation, while girls would appear to look for things, and put them up in their places.

They then took goods up to Mrs. Mackinley's chamber.  She

[Abbott v. Mackinley.    Same v. Same.    McClurg v. Mackinley.]

had been married six weeks when I first went to live there; when the sheriff and creditors came she was in the store; he came in front door and told her she must lock up, for they were coming; she told us to lock up; we did so; cellar and back store; sign being Mary Snyder & Co. when I went; then Mary Mackinley was put up; Mrs. Mackinley owned both stores; he never sold the goods; he did no more than as I have stated.

Cellar was damp, we had been looking for another dry place two or three weeks; two windows in back store; one open on barber's shop dressing-room, Hinton's.

John Meany, sworn.—I know handwriting of Wm. B. Meany; this is his handwriting; I have frequently seen him write.

Marriage certificate, 23d June, 1834.

John W. Tilford, sworn.  I have seen these notes, in favour of Dean; I asked Mrs. Mackinley if she had given the notes, she said she had; they were correct.

Mr. McClurg owns them now; I sold them as broker of Mr. Dean to Mr. McClurg; perhaps one and a quarter to one and a half; but can't recollect now.

Alexander McClurg, Jr., sworn.—I am nephew of plaintiff; I know Mr. Corbit; he carried on business; the body of the note is in Mr. Rhodes' handwriting; he was in business.

The notes were put in evidence; one of them "for value received in merchandize, of H. C. Corbit."

After reference to the facts, the judge charged the jury in substance that there were three questions for consideration.

" 1st.  Was there a business carried on under the name of Mary Mackinley?

" The parties concur in answering this question in the affirmative.

" 2nd.  Was that business so carried on, in truth the business of Edward Mackinley?

" There are some legal principles applicable here, which it is my duty to state, for the information and government of the jury.

" In Mackinley v. McGregor, 3 *Wharton's Rep.* 393, it is stated by Mr. Justice Rogers to be the law :—' That if a husband assents, or knowing of the contracts of his wife, does not expressly dissent, he is chargeable with her agreement.'

" But the defendant's counsel contend that if the *credit* was given to the wife, the plaintiff cannot recover against the hus-

[Abbott v. Mackinley. Same v. Same. McClurg v. Mackinley.]

band. Upon this subject the Supreme Court have also authoritatively settled the law in the case already referred to."

(The judge then read Mr. Justice Rogers' remarks at page 395, and proceeded as follows:)

"It is then for the jury to determine as matters of fact, whether the defendant was or was not acquainted with the course of dealing in which his wife was engaged: and whether he did or did not forbid it; and whether he did or did not take any step to put others on their guard?

"If he was so acquainted, and did not forbid the course of dealing, and did not take any steps to put others on their guard, then the doctrine of the Supreme Court, is directly applicable. The business, in such a state of things, was his business, no matter to whom the credit was given.

"The 3d question is this: Did Mary Mackinley make the promissory note declared on in this suit, with the authority of Edward Mackinley, in his business name of Mary Mackinley?

"The jury will consider the testimony of Hannah Hill, David Milne, and others in connexion, particularly with the testimony of Charles A. Vinton; and if they are satisfied from the whole evidence, that in point of fact, the third question should be answered in the affirmative, then the law will authorize a verdict for the plaintiff in this action.

"The jury will, of course, confine their attention to the evidence before them in this particular case.

"If they find, upon any of the three questions above stated, in favour of the defendant, then their verdict ought to be for the defendant.

"I am asked by the defendant's counsel, to charge, that the words 'for merchandize received of H. C. Corbit,' destroy the negotiable character of one of the notes. It is, however, plain that they do not. They mean merely that Mr. Corbit's merchandize was the value had for the note; they have no relation to the promise to pay. I adhere to the decision of this court made in July, 1838, on the rule for a new trial in Abbott *v.* Mackinley, in reference to the form of action."

The verdict was for the plaintiff, and defendant moved for a new trial, assigning the following reasons:—

"*First.*—The judge charged that these were two questions for the jury:

[Abbott v. Mackinley.    Same v. Same.    McClurg v. Mackinley.]

" 1. Did the defendant know of the course of dealing of Mary Mackinley, and take no steps to forbid it, or to put others on their guard against it?  If so, he is liable, although the credits in the case before the jury were actually given to Mary Mackinley.  If he was conusant of her dealings, the credit cannot be given to the wife.

" 2. Did Mary Mackinley make the notes with her husband's assent?  If the jury be satisfied she did, they will find for the plaintiff, and they may satisfy themselves of her husband's assent from Mr. Vinton's evidence of his assent to the other note given to Croft.

" And in so charging, erred in point of law.

" *Second.*—The judge charged that the H. C. Corbit note was a negotiable note, and in so charging, erred in point of law."

*Holcomb* and *F. W. Hubbell*, for plaintiff.
*C. Ingersoll* and *J. R. Ingersoll*, for defendant.

PETTIT, *President.*—The question made upon the motion for a rule to show cause why a new trial should not be granted, seems to be whether in Mackinley v. M'Gregor, 3 *Wharton*, Mr. Justice Rogers in pages 393-4-5, was asserting principles of law for the positive control of courts and juries, or was merely stating considerations which would probably influence jurors in deciding the question of fact, whether credit was given to the wife or not. When I read this language, " In order to avoid the responsibility which the law throws upon the husband, there must be a want of knowledge of the transaction, an absence of assent either express or implied, and moreover, the credit must be given to the wife and not to the husband ;" I certainly supposed, in charging the jury, that he was lucidly and emphatically laying down the law of Pennsylvania, and was declaring the fact, that the goods were charged to the wife, to be immaterial, unless it were connected with and superadded to the circumstances of want of knowledge on the part of the husband, and the absence of his express or implied consent.  When he afterwards says, " Whether the credit is given to the wife, is a question of fact for the consideration of the jury ; but I cannot believe that where a husband is well acquainted with the course of dealing in which his wife is engaged, when he does not forbid it, nor take any steps

[Abbott v. Mackinley.   Same v. Same.   McClurg v. Mackinley.]

to put others on their guard, these cases (meaning the reported
cases which he before cited,) can be made to apply ;" and further
remarks, " His consent is presumed, and the presumption can
only be rebutted by an express prohibition on the part of the
husband.   The fact, that the contract was made by the wife, and
that she is charged with the goods is, under the circumstances
of but little weight, it affects the form but not the substance
of the contract.   It by *no means of itself*, discharges him from
liability which is the *legal consequence* of his assent to her acts ;"
I assumed that the learned judge was still making an unequivo-
cal exposition of obligatory rules of law, and was again denying
any legal effect to the fact of the giving credit to the wife, in a
case in which the law presumed the husband's consent to her
course of dealing from his knowledge of it without prohibiting it.
In saying to the jury, that, upon the hypothesis stated in my
charge, it was no matter to whom the credit was given, I did
not impugn the rule, which in a proper case, leaves to the jury as
a question of fact, the point whether the credit was or was not
given to the wife, but I instructed them, that if they found the
existence of a certain state of facts, the law would then form its
own conclusion, irrespective of the question of giving credit, and
would thus, of course, clearly render the consideration of such
a question immaterial.

A careful perusal of the whole opinion, since the distinction
now urged, has been, in a particular manner, brought into notice,
confirms me in the belief that I adopted the true spirit of the
views which the judge presented.   The entire scope of the argu-
ment requires this result.   It seems plain to my apprehension, that
so far from merely intimating considerations which might induce
a jury to arrive at a particular conclusion of fact, he was stating
the principles, which in the authoritative judgment of the court of
which he was a member, were to constitute the elements of legal
decision.

I carried his doctrines only as far as he carried them, namely,
to the *contract of sale*.   The necessity which was imposed on the
plaintiff, of going still further in his proof, when he claimed, as
in this case, on negotiable paper, was distinctly pointed out to the
jury.

When I ascertained that my brother Jones did not concur in

[Abbott v. Mackinley.  Same v. Same.  McClurg v. Mackinley.]

the construction I had put upon the language of Mr. Justice Rogers, I invited the discussion of the question on the motion for a new trial, allowing to the defendant the benefit of a bill of exceptions, in the event of the charge being sustained by this court in bank.  As my brother Stroud agrees with me upon the subject, the rule for a new trial must be refused.

It is a source of satisfaction, that the bill of exceptions in the present instance, affords an opportunity to the defendant, to request the Supreme Court to examine the opinion in McKinley v. McGregor, and to pronounce whether it has, or has not been misunderstood by a majority of the members of this court.

STROUD, J., concurred.
JONES, J., dissented.

Motion for a new trial refused.