PURNELL (KENNEDY v.). See Case No. 7,-704.

## Case No. 11,475.

### PURVIANCE v. UNION NAT. BANK.

[8 N. B. R. 447;[1] 30 Leg. Int. 352; 21 Pittsb. Leg. J. 33.]

Circuit Court, W. D. Pennsylvania. Sept. 27, 1873.

BANKRUPTCY—RIGHTS OF ASSIGNEE—FRAUD OF BANKRUPT.

A made a loan to B and delivered to B's agent a package of bank notes containing the amount of the loan. At the time the agent of B was instructed to negotiate the loan B was insolvent, and the contract made by his agent was after his failure, but before the news had reached A. It also appeared that B had then resolved not to pay the bill or note which was given as evidence of the loan; that as soon as A was informed of the failure he endeavored to reclaim the package of notes still in the hands of B's agent; that it was placed in a bank with the seal unbroken, for the benefit of A, and the next day B, in the presence of the president of the bank, expressly disclaimed ownership of the said package and declared that it justly belonged to A. *Held*, that the assignee in bankruptcy of A had no title to the package of notes for the reason that fraud is ineffective to change the ownership of property obtained by means of it; that the assignee is invested with the rights of the bankrupt only, subject, of course, to all the equities which would have affected him if he had not been adjudged a bankrupt.

In bankruptcy.

McKENNAN, Circuit Judge. The real nature of the transaction out of which the present contention has sprung, is that of a loan by McGough, Parker & Co., to Bates & Goldsborough, evidenced by a bill drawn by the agent of the latter at Parkers on themselves at Pittsburg, at three days, for five thousand dollars, and discounted by the former. McGough, Parker & Co., accordingly delivered to the agent of Bates & Goldsborough a package of bank notes containing the amount of the bill, which was placed in the custody of the defendant, and is claimed

[1] [Reprinted from 8 N. B. R. 447, by permission.]

by the plaintiff as assignee in bankruptcy of Bates & Goldsborough, and by McGough, Parker & Co. The plaintiff now moves for judgment, notwithstanding the affidavit of defence, and the question is whether a sufficient defence is alleged in the affidavit. This motion is in effect a demurrer to the defendant's evidence. The affidavit is, therefore, to be taken as true, and every inference which a jury might fairly deduce from the facts stated in it, as admitted.

I think the following conclusions of fact are fully justified by the statements of the affidavit: First. That at the time the agent of Bates & Goldsborough at Parkers was instructed to raise the amount of the bill in question, viz., on the 6th of November, 1871, the firm was in fact insolvent, and had determined to make default in the payment of their commercial paper; that at three o'clock on that day their insolvency became public at Pittsburgh; that the contract between them, by their agent and McGough, Parker & Co., was made at Parkers after their failure had occurred, but before McGough, Parker & Co., had any knowledge of it; and that Bates & Goldsborough had then resolved not to pay the bill which was given by their agent to McGough, Parker & Co. Inasmuch as they preconceived a design not to pay this bill and to become insolvent, the transaction in its inception was a fraud upon McGough, Parker & Co., irrespective of the integrity of the agent of Bates & Goldsborough. Second. That as soon as McGough, Parker & Co. were informed by telegram from Pittsburgh, on the evening of November 6th, of the failure of Bates & Goldsborough, they endeavored to reclaim the package of bank notes shortly before delivered to the agent of Bates & Goldsborough; that it was not then returned to them for the sole reason that it had been put in course of transmission by the Adams Express Co. to F. A. Dilworth at Pittsburg, who was a member of the firm of Bates & Goldsborough; that an agent was at once dispatched to intercept the package in the hands of the express company; that he called at the express office early in the morning of November 7th, and was informed that the package was in the hands of their messenger for delivery to its consignee; that he then went to the office of F. A. Dilworth, to whom the package had not then been delivered, who disclaimed title to it, and proposed to place it in the Union National Bank of Pittsburgh for the benefit of McGough, Parker & Co.; that on the same day Dilworth did deposit the package, sealed and unbroken, in said bank, and on the next day Bates & Goldsborough, in the presence of the president of said bank, in the banking house, expressly disclaimed ownership of said package, and declared that it justly belonged to McGough, Parker & Co.

Under this state of facts, it is very evident that the plaintiff's claim has no equi-

table merit, and that the property in dispute should be awarded to him only because he has an incontrovertable legal title to it. He occupies the place of Bates & Goldsborough, and is invested with their rights, subject to all the equities, which would have affected them if they had not become bankrupt. If they were not entitled to this property, as against McGough, Parker & Co., their assignee cannot recover it. Whatever title Bates & Goldsborough had to the bank notes in question, grew out of their contract with McGough, Parker & Co. But it is an admitted fact that this contract was essentially fraudulent. Bates & Goldsborough obtained possession of these notes when they were in fact insolvent, and knew they were unable to redeem their engagement with McGough, Parker & Co., and when they had indeed predetermined to dishonor it. Their possession of the notes was therefore fraudulent, and the property of McGough, Parker & Co. in them was not divested. Fraud is ineffective to change the ownership of property obtained by means of it; and so Mr. Justice Rogers says in Mackinley v. McGregor, 3 Whart. 396, "It is certain, as a general principle, that when a person purchases goods with a preconceived design of not paying for them, it is a fraud, and the property in the goods does not pass to the vendee." This was said in reference to a sale of merchandise, but it can make no difference that the subject of the contract is bank notes instead of any other form of personal property, if they are only susceptible of specific identification. The principle is of the broadest comprehensiveness, for it is an expression of the maxim, "Nullus commodum capere potest de injuria sua propria," and is applicable alike to all transactions, to the legal efficacy of which the unconstrained assent of both parties is essential. Can there be any doubt that in an action of replevin or trover Bates & Goldsborough could not stand upon an assertion of their rightful ownership of the notes in question? And why? Because their apparent ownership was acquired by means of a fraud practiced upon McGough, Parker & Co., and they would not be permitted to take advantage of their own wrong. But they have committed the package to the custody of a third person, and can reclaim it only on the ground that it is rightfully theirs. If they could not resist the demand of McGough, Parker & Co., because, under the circumstances, their title to the property was not divested, they certainly do not occupy any better position by becoming the actors, and invoking a positive judicial sanction of their admitted wrong.

But there is another decisive reason against the allowance of the motion. As soon as the fraud of Bates & Goldsborough was discovered by McGough, Parker & Co., they took immediate steps to recover the package of notes. Although it had been delivered to the agent of Bates & Goldsborough, it had not actually come into their hands. Whether it had or not, the parties were unquestionably capable of rescinding their contract, and thus placing each other as they stood before. To effect this, needed only the assent of both parties to an appropriate arrangement. So when the agent of McGough, Parker & Co. went to Pittsburgh to reclaim the package, and F. A. Dilworth, its consignee, before its reception, disclaimed all title to it, and proposed to place it in the Union National Bank for the benefit of McGough, Parker & Co., and on the same day did place it there unopened, the contract was annulled by the consent of both parties, and the property in the package was revested in McGough, Parker & Co. And this result was confirmed by the equally emphatic disclaimer of Bates & Goldsborough, made the next day, in the Union National Bank. They were then legally competent to disavow the contract made by their agent, even if it had been free from any taint of fraud, but, under the circumstances, common honesty demanded that they should renounce the ownership of what was not justly theirs. That they did so is fairly imported by their declarations and acts, and so proper an adjustment ought not now to be subverted, to the end that one man's property may be taken to pay another man's debts. Salte v. Field, 5 Term R. 214; Atkin v. Barwick, 1 Strange, 165.

Upon both the grounds stated the plaintiff is not entitled to judgment, and his motion is therefore denied.